David S. Casey, Jr., SBN 060768
 *dcasey@cglaw.com*
Gayle M. Blatt, SBN 122048
 *gmb@cglaw.com*
Jeremy Robinson, SBN 188325
 *jrobinson@cglaw.com*
P. Camille Guerra, SBN 326546
 *camille@cglaw.com*
Michael J. Morphew, SBN 304463
 *mmorphew@cglaw.com*
**CASEY GERRY SCHENK FRANCAVILLA**
 **BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Tel.: 619.238.1811; Fax: 619.544.9232

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MURILLO, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC., a California corporation; and HONDA MOTOR COMPANY, LTD., a Japanese corporation,<br><br>        Defendants. | Case No. 5:23-cv-593<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1) Breach of Express Warranty<br>2) Breach of Implied Warranty<br>3) Unjust Enrichment<br>4) Negligence<br>5) Fraud by Omission or Fraudulent Concealment<br>6) Failure to Recall/Retrofit<br>7) Violation of the Song-Beverly Consumer Warranty Act<br>8) Violation of California's False Advertising Law<br>9) Violation of the Consumer Legal Remedies Act<br>10) Violation of California's Unfair Competition Law<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Daniel Murillo brings this action against American Honda Motor Company, Inc. ("AHM"), and Honda Motor Company, LTD. ("HMC") (together with AHM, "Honda" or "Defendants") on behalf of himself and all persons in the United States who purchased or leased any new 2022-2023 Honda Civic ("Class Vehicles" or "Vehicles"). Defendants designed, manufactured, marketed, distributed, sold, warranted, and/or serviced the Class Vehicles. Plaintiff alleges the following based on personal knowledge as to the facts pertaining to him, and on information, belief, and the investigation conducted by his counsel as to all other allegations.

## I.     NATURE OF THE ACTION

1.      Plaintiff brings this consumer class action to address Honda's failure to disclose the existence of material safety defects—and to remedy those defects—in the Class Vehicles.

2.      Specifically, Defendants failed to disclose that the electronic power steering ("EPS") system in the Class Vehicles is defective.

3.      In particular, the Class Vehicles are equipped with defective EPS systems that are prone to random momentary failures during normal use, typically at highway speeds, that require increased steering effort/input by the driver—a phenomenon often described as "sticky steering" (the "Defect"). This defect is significant because steering interruptions—even momentary—can lead to a loss of vehicle control and crashes. The Defect results in drivers exerting additional force to steer the vehicle, causing jerking, over steering, and/or overcompensation. The Defect was present at the time of sale, and inherent in each Class Vehicle. Plaintiff believes there are over 238,271 Class Vehicles.

4.      The Defect poses a significant safety hazard to drivers, including Plaintiff and Class Members. Without consistently functioning steering, drivers may not be able to adequately control their vehicles and avoid potential road hazards such as people, animals, and road debris. As a result of the Defect, drivers

have a higher risk of crashing. Class Member have reported concerns and fears of driving due to the Defect through multiple channels—including to Defendants and the National Highway Traffic Safety Administration.

5.    Plaintiff alleges Defendants have been aware since at least mid-2015 of consumer complaints about its EPS systems in Civics generally, and have been aware from at least early 2022 that Class Vehicles' EPS systems would momentarily and unexpectedly require drivers to exert additional force to steer Class Vehicles. Despite the Defect, though, Defendants continue to install the Defective EPS systems, and refuse to disclose the alleged Defect to consumers.

6.    Honda is well experienced in the design and manufacture of vehicles. As an experienced vehicle manufacturer, Honda conducts quality control and pre-sale testing to ensure its vehicles are free from defects and align with its specifications. This should have included the EPS system. As such, Honda knew or should have known the Class Vehicles were plagued by the current Defect and presented serious safety risks.

7.    Plaintiff and Class Members purchased or leased vehicles that, at the time of purchase or lease, were of a lesser standard and quality than represented and were not fit for the ordinary purpose of providing safe transportation. Plaintiff and Class Members would have paid less for their vehicles had they known of the Defect. Plaintiff and Class Members have suffered damages in that they lost the benefit of their bargain, overpaid for their Class Vehicles, and suffered diminution in value of their Class Vehicles, loss of use of their Class Vehicles, as well as incurred out-of-pocket expenses related to loss of use of the Class Vehicles.

## II.    PARTIES

### A.    PLAINTIFF DANIEL MURILLO

8.    Plaintiff Daniel Murillo is a resident of Corona, California.  In about November, 2021, Plaintiff Murillo purchased a new 2022 Honda Civic from Honda of Santa Monica.  Prior to purchase, Mr. Murillo spoke with the dealer sales

representative about the vehicle and inspected the Monroney sticker posted by Honda on the side of the vehicle. Plaintiff previously test drove a 2022 Honda Civic at a local dealership. Mr. Murillo was never informed by Defendants or the dealer sales representative that his vehicle suffered from the Defect, and relied upon this fact in purchasing his vehicle. Had Mr. Murillo been informed his vehicle suffered from the Defect, he would not have purchased it. Mr. Murillo purchased his vehicle for personal, family or household purposes.

9. Mr. Murillo began to experience the Defect approximately a year and two months after purchasing his vehicle. For example, while on the freeway, Mr. Murillo has had to jiggle the steering wheel because it sticks or feels like it's locked. Mr. Murillo has experienced the Defect on an almost weekly basis since the beginning of 2023. Mr. Murillo presented his vehicle to Lake Elsinore Honda and complained of the steering problems he was experiencing. The dealership told him there is no recall regarding this issue and was unable to recreate it. As a result, Mr. Murillo's vehicle was not repaired.

10. At all times, Mr. Murillo has driven the vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**B. DEFENDANTS**

11. Defendants, by and through their various entities, design, manufacture, market, distribute, service, repair, sell, and lease passenger vehicles—including Class Vehicles—throughout the United States. At all relevant times, Defendants were and are engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and automotive components throughout California and the United States.

12. Whenever, in this Complaint, reference is made to any act, deed or conduct of Defendants, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of its officers, directors,

agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendants.

### 1. *Defendant American Honda Motor Co., Inc.*

13.     Defendant, American Honda Motor Company, Inc. is a corporation organized under the laws of the State of California and registered to do business in California, and is a wholly owned subsidiary of Honda Motor Co., LTD. American Honda was established in 1959, and has its principal place of business and headquarters at 1919 Torrance Blvd., Torrance, CA 90501. American Honda is doing business in California and throughout the United States.

14.     American Honda is responsible for sales, marketing, service, distribution, manufacture, import and export of Honda branded products, including vehicles and parts, in the United States. American Honda is also the warrantor and distributor of Honda vehicles, including the Class Vehicles, throughout the United States.

### 2. *Defendant Honda Motor Co., LTD.*

15.     Defendant Honda Motor Co., LTD. was founded in 1948 under Japanese law, with its principal place of business located at 2-1-1 Minami-Aoyama, Minato-ku, Tokyo, 107-8556, Japan. Honda Motor Co., LTD. is the parent corporation of AHM. Plaintiff alleges Honda Motor Co., Inc. made the decision to found and register AHM as a California corporation, and controls virtually all AHM's operations—including sales, marketing, management policies, technical information, servicing instructions, governance policies, pricing, and warranty terms.

16.     Honda Motor Co. designs, engineers, manufactures, tests, markets, supplies, sells, and distributes Honda-branded vehicles and parts worldwide. It also provides AHM and United States subsidiaries all the manufacturing, servicing, and repairing technical information for Class Vehicles.

### III.    JURISDICTION AND VENUE

17.    This court has jurisdiction over Plaintiff's and the Class Members' claims pursuant to 28 U.S.C. § 1332(a) because: (a) the proposed Class Members are citizens of a state diverse from Defendants' citizenship; and (b) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Further, there are at least 100 members of the proposed class, and the aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

18.    In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all the claims are derived from a common nucleus of operative facts and are such that Plaintiff would ordinarily expect to try them in one judicial proceeding.

19.    This Court has personal jurisdiction over Defendants because AHM is incorporated in this District and HMC conducts substantial business in this District through AHM, and discovery will show significant conduct involving Defendants giving rise to the Complaint took place in this District.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant AHM's contacts are sufficient to subject it to personal jurisdiction in this District, and therefore, Defendant resides in this District for purposes of venue, or under 28 U.S.C. § 1391(b)(2) because certain acts giving rise to the claims at issue in this Complaint occurred, among other places, in this District.

### IV.    FACTUAL ALLEGATIONS

21.    Automotive power steering is a system to reduce the amount of effort needed to be exerted by a driver to turn the steering wheel. Steering is heavy and requires significant effort, especially at low speeds, in a vehicle without power assistance of some kind.[1]

---

[1] David Vanderwerp, *What Is Power Steering and How Does It Work?*, Car and

CLASS ACTION COMPLAINT

22.     The 1951 Chrysler Imperial was the first production car to have a power-assisted steering and other manufactures soon offered power-assisted steering as well.[2] Most power-assisted steering systems (commonly referred to as "power steering") between the 1950's and early 2000's were hydraulic—an engine-powered pump pressurizes hydraulic fluid in a mechanical system, such as rack-and-pinion or recirculating-ball systems, to reduce the driver effort needed to turn the steering wheel. Over time, power steering went from optional to standard equipment.

23.     Over time, power steering systems evolved. In recent years, electric power steering systems became the prevailing type of power steering system. EPS systems use electric motors to provide steering assistance.[3] In most vehicles, the vehicle's computer is then able to adjust the amount of assistance based on the vehicle's speed.[4]

24.     Honda designed, manufactured, distributed, sold, and leased vehicles equipped with EPS systems for many years. Honda introduced its first EPS system on the 1993 Acura NSX.[5] Honda began installing EPS on some Civics in the United States in 2002.[6] Honda describes EPS as:

---

Driver (June 19, 2019), https://www.caranddriver.com/features/a27888229/power-steering/, (last visited March 29, 2023).

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Where More Is Less: Honda's New Electric Power Steering*, Honda (December 13, 2006) https://hondanews.com/en-US/powersports/releases/release-d35f7d39e31ce24676713b004c34bf0e-where-more-is-less-hondas-new-electric-power-steering (last visited March 29, 2023).

[6] Todd Lassa, *2002 Honda Civic Si - First Drive*, Motortrend (January 2, 2002), https://www.motortrend.com/reviews/2002-honda-civic-si/ (last visited March 29, 2023).

Using a brush-type DC motor installed concentrically around the steering rack, the system combines torque and velocity information from the steering wheel with vehicle-speed information to calculate the optimum amount of steering assist to provide. Utilizing electronic sensors and a sophisticated electronic control unit (ECU) allowed engineers to decrease steering assist at higher speeds and increase it at lower speeds when it's most needed.[7]

25.    In 2012, Honda installed Motion-Adaptive EPS on all Civic models.[8] By July 2015 (if not before), Honda knew of *and was investigating* consumer complaints regarding EPS in 2012-2015 Honda Civics.[9]

26.    For the revised Civic beginning with the 2022 model year and continuing with 2023 models (aka the Class Vehicles), Civics are equipped with an EPS system referred to as a Variable Ratio Electric Power-Assisted Rack-and-Pinion Steering.[10] Variable ratio means the amount of steering wheel rotation necessary to turn a vehicle's wheels—the steering ratio—changes based on the vehicle's speed and other factors.

---

[7] *Where More Is Less: Honda's New Electric Power Steering, supra* note 6.

[8] 2012 Honda Civic – Body and Chassis, Honda (April 20, 2011), https://hondanews.com/en-US/releases/2012-honda-civic-body-and-chassis?l=es-ES (last visited March 30, 2023).

[9] NHTSA Manufacturer Communication, ID Number 10107352, available at: https://static.nhtsa.gov/odi/tsbs/2015/MC-10107352-9340.pdf (last visited March 30, 2023); *see also* NHTSA ID Numbers 10107323 (July 17, 2015) and 10107158 (July 27, 2015).

[10] 2022 Civic Sedan Specifications & Features, Honda (June 16, 2021), https://hondanews.com/en-US/honda-automobiles/releases/release-53541be6030b25a47a2899aba12a8f7a-2022-civic-sedan-specifications-features (last visited March 30, 2023); 2023 Honda Civic Sedan Specifications & Features, Honda (October 18, 2022), https://hondanews.com/en-US/honda-automobiles/releases/release-a3be1e0e9f10694e8e84ab729c005385-2023-honda-civic-sedan-specifications-features (last visited March 30, 2023).

27.     Early in 2022, consumers began complaining to the National Highway Traffic Safety Administration ("NHTSA") about the Defect in Class Vehicles. The Defect occurs without warning under normal driving conditions, causing the Class Vehicles to lose steering control and maneuverability typically at highway speeds. This extreme safety risk has been described in various ways by consumers, but often is described as "sticky" steering. Numerous complaints have been submitted to NHTSA about this Defect. For example, in NHTSA ID Number 11498734, an individual described an incident occurring on March 1, 2022:

> Steering becomes sticky and stuck when turning to left as steering must be manually auto-corrected to center mostly more prominent on highway speeds causing car to be at serious risk for crash. Dealer diagnosed problem as PS rack and replacement is around $3k with out of pocket or extended warranty. This was a known issue for previous generation and continues to be an issue in this generation.

28.     Similarly, in NHTSA ID No. 11464979, an individual submitted a complaint on May 17, 2022, describing an incident on May 15, 2022:

> Steering wheel starts to stick or bind after a 30 minute drive. When stopped there is clunk coming from the electronic power steering. Once on the high way, the steering wheel gets really sticky and when trying to do a small correction it jerks. After a while it becomes really unsafe to drive since all the correction you make are extreme and it struggles to keep the car centered on the lane without constant struggle.

29.     In NHTSA ID Number 11492258, a consumer describes an incident on September 5, 2022:

Our 2022 Civic Touring started exhibiting weird steering behavior about 3000 miles in. With higher speeds, the steering "sticks" and requires slight, but manual force to free it. Usually, the stickiness happens and the car veers slightly to the left, I have to pull right to free the steering wheel again. This is dangerous as it can invite over compensation when correcting the locked steering, at best creates a jerky movement when correcting, at worst, over correction can cause accidents. Honda is not acknowledging this issue.

30.    As of March 17, 2023, the National Highway Traffic Safety Administration ("NHTSA") Office of Defects Investigation (ODI) received several Early Warning Reporting Field Reports and **145 consumer complaints** about the Defect in Class Vehicles and opened a Preliminary Investigation.[11] The ODI summarized the issue as:

a momentary increase in steering effort in model year (MY) 2022 and 2023 Honda Civic vehicles. The complaints report that the momentary increase in steering effort (described as "sticky steering") occurs mostly at highway speeds after driving for a certain amount of time. The reports have been received over the past 11 months with most occurring with low vehicle mileage.[12]

31.    Despite the serious safety risks posed by the loss of steering control due to the Defect and numerous complaints and the NHTSA Preliminary

---

[11] NHTSA, Momentary Increased Steering Effort, Investigation Number PE23-005 (Mar. 17, 2023) https://static.nhtsa.gov/odi/inv/2023/INOA-PE23005-3644.PDF (last visited March 23, 2023).

[12] *Id.*

Evaluation, Defendants have not recalled the Class Vehicles to repair the Defect, has not offered its customers a suitable repair or replacement free of charge, and has not offered to reimburse all Class Vehicle owners and leaseholders the costs they have incurred relating to diagnosing and repairing the Defect.

32.     Plaintiff is informed and believes, and based thereon alleges, that Honda was aware of the Defect prior to manufacturing, marketing, and selling the Class Vehicles because earlier Honda Civic and other Honda models experienced an identical and wide-spread malfunction of their EPS systems.

33.     The alleged Defect is inherent in, and the same for, all Class Vehicles. Discovery will show all Class Vehicles' EPS systems are designed, manufactured, and installed by Defendants in substantially the same manner, and will confirm the Defect in Class Vehicles is caused by improperly designed, manufactured, and/or installed EPS systems.

34.     Further, Discovery will show Defendants knew or should have known the EPS system in Class Vehicles was defective, prone to premature failure, and putting drivers in a dangerous position due to the inherent risks due to the Defect as a result of pre-production testing, manufacturing quality control audits, and by complaints from consumers who purchased or leased the Class Vehicles and experienced the Defect. Despite this knowledge, Defendants failed to disclose the Defect and its associated safety risk to consumers. As a result of this failure, Plaintiff and Class Members have been damaged.

**A.    DEFECTIVE STEERING SYSTEMS CREATE AN UNREASONABLE AND FULLY AVOIDABLE SAFETY HAZARD.**

35.     Steering problems can cause drivers to lose control of their vehicles, which in turn increases the likelihood of collision with pedestrians, animals, inanimate objects, and road hazards. Functioning steering is a basic component of any passenger vehicle.

36.    Automakers, including Defendants, are required by Federal law to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data.[13]

37.    Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including those which are safety related. *Id.* Discovery will show that AHM is an agent of HMC for the purpose of monitoring the NHTSA complaint database and for communication with NHTSA regarding safety defects, as manufacturers are required to do by federal law. Therefore, Defendants knew or should have known of the many complaints about the Defect logged by ODI. The content, consistency, and disproportionate number of those complaints alerted, or should have alerted, Defendants to the Defect.

38.    The NVLW provided by Honda for 2022 vehicles includes basic warranty coverage, stated in relevant part:

> **Time and Mileage Period**
>
> This warranty begins on the date the vehicle is put into use in one of the following ways:
>
> • The vehicle is delivered to the first purchaser by an authorized Honda automobile dealer.
>
> • The vehicle is leased.
>
> • The vehicle is used as a demonstrator or company vehicle.

---

[13] *See* TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

> Your vehicle is covered for 3 years or 36,000 miles, whichever comes first. Some parts may have separate coverage under other warranties described in this booklet.
>
> **Warranty Coverage**
>
> Honda will repair or replace any part that is defective in material or workmanship under normal use. See Operation and Maintenance of Your Honda on page 37. All repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this New Vehicle Limited Warranty expires.[14]

**B.    DEFENDANTS HAD SUPERIOR KNOWLEDGE REGARDING THE DEFECT**

39.    Defendants had superior and exclusive knowledge of the Defect, and knew or should have known that the Defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased Class Vehicles.

40.    Plaintiff alleges that before Class Members purchased or leased Class Vehicles, Defendants knew about the Defect through sources not available to consumers, including pre-release testing data, early consumer complaints to Honda and its dealers who are their agents for vehicle repairs, testing conducted in response to complaints, high failure rates and replacement part sales data, consumer complaints to NHTSA (which Defendants monitors), and through other aggregate data from Defendants dealers about the problem.

41.    Defendants are experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Defendants conducts tests,

---

[14] *2022 Honda Warranty Basebook*, Honda, page 9, https://owners.honda.com/Documentum/Warranty/Handbooks/2022_Honda_Warranty_Basebook.pdf (last visited March 31, 2023).

including pre-sale durability testing, on incoming components, including the EPS system in Class Vehicles, to verify the parts are free from defect and align with Defendants' specifications. Thus, Defendants knew or should have known the EPS system in Class Vehicles was defective, prone to premature failure, and putting drivers in a dangerous position due to the inherent risks due to the Defect.

42.    Further, Honda was aware that EPS systems in prior Honda Civics, and similar to the EPS system in Class Vehicles, malfunction and pose a safety hazard. Additionally, Honda recalled some Accord, CR-V, and Civic models due to EPS malfunctions and there were numerous consumer complaints describing how faulty EPS systems create significant safety risks. Examples of the numerous complaints to the NHTSA regarding the 2016-2021 Civic, including NHTSA ID Number 10713357, incident dated April 24, 2015 (caps in original):

> WHILE I WAS DRIVING MY CAR 40MPH SOMETHING HAPPENED AND SUDDENLY POWER STEERING WENT OFF ALONG WITH A MESSAGE. IT IS SO DIFFICULT TO STEER. AND THE DEALER STATED THAT THERE IS NOTHING WRONG. IT'S STILL AT THE DEALER. HOWEVER PROBLEM KEEPS GOING ON. I THINK IT HAS TO BE RECALLED, TOO. *TR

43.    NHTSA ID Number 10887583, incident dated July 19, 2016 (caps in original):

> DIFFICULT TO STEER AT BOTH LOW AND HIGH SPEED. A LOT OF RESISTANCE TO TURNING THE WHEEL. TOOK IT TO DEALER WHO COULD FIND NOTHING WRONG, AND WOULD NOT

INVESTIGATE FURTHER UNDER WARRANTY. SLIGHTLY MORE THAN 60,000 MILES

44.    NHTSA ID Number 11065765, incident dated January 28, 2018 (caps in original):

> I WAS DRIVING ON HIGHWAY YESTERDAY WITH 2 OF MY TODDLER KIDS IN MY HONDA. SUDDENLY THE POWER STEERING LIGHT TURNED ON AND IMMEDIATELY THE STEERING BECAME EXTREMELY DIFFICULT TO TURN AND LIKE DEAD. I WAS VERY SCARED AND TRY TO SLOW DOWN. BUT IT IS STILL VERY EXTREME DIFFICULT TO TURN. I TURNED ON THE DOUBLE FLASHING LIGHT AND SLOWED MOVED TO THE NEARBY GAS STATION AND ASKED MY INSURANCE TO TOW MY CAR TO DEALER. I AM 20[]WEEKS PREGNANT SO I HAVE 3 CHILDREN IN THE CAR. THE SECOND DAY THE DEALER CHECKED EVERYTHING BUT TOLD ME THEY CANNOT FIND ANY PROBLEM WITH IT. I FOUND A LOT OF COMPLAINT FILED ONLINE WITH 2012 HONDA CIVIC AND THERE IS A RECALL WITH CERTAIN 2012 HONDA CIVIC THAT WAS MADE LATE THAT YEAR. I CALLED HONDA INC AND CHECKED MY VIN, I WAS INFORMED THERE IS NO RECALL ON MY CAR. I EXPLAINED THIS IS VERY SIMILAR TO OTHER CASES THEY MADE RECALL

ON ABOUT THE STEERING SYSTEM AND THIS IS VERY LIKELY DUE TO THEIR MANUFACTURE MISTAKE AS I HAVE BEEN DRIVING THIS CAR WITHOUT ANY ISSUE IN 5 YEARS AND NO ANY ACCIDENT OR INJURY. THEY SAY THERE IS NOTHING THEY CAN DO. THE CAR DEALER ALSO INFORM ME THERE IS NOTHING THEY CAN DO BUT HAVE ME DRIVE CAREFULLY AND THEY TOLD ME THIS CAN HAPPEN AGAIN!!!. I AM PREGNANT AND HAVE 2 LITTLE CHILDREN I SENT TO SCHOOL WITH DAILY. I CANNOT HAVE THIS HAPPEN AGAIN IN A TRAGIC ACCIDENT.!!!

45.     Further, discovery will show Defendants knew of the impact of this Defect from the number of reports received from dealerships, and from prior similar complaints from previous Civic models. Often, the Defect manifests itself early in a vehicle's life. Many NHTSA complaints about Class Vehicles are reported with fewer than 10,000 miles on a vehicle. Defendants' customer relations department collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

46.     Defendants' warranty department similarly analyzes and collects data submitted by its dealerships to identify warranty trends in its vehicles. It is Defendants' policy that when a repair is made under warranty the dealership must provide Defendants with detailed documentation of the problem and a complete disclosure of the repairs employed to correct it. Dealerships have an incentive to

provide detailed information to Defendants, because they will not be reimbursed for any repairs unless the justification for reimbursement is sufficiently detailed.

47.    The existence of the Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiff and Class Members known of the Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

48.    Reasonable consumers, like Plaintiff, expect a vehicle's steering system to be safe and that it will function in a manner that will not pose a safety risk, and be free from defects. Plaintiff and Class Members further reasonably expect Defendants not to sell or lease vehicles with known safety defects, such as the Defect at issue here, and to disclose any such defects to their consumers when they learn of them. Plaintiff and Class Members did not expect Defendants to conceal and fail to disclose the Defect to them, and to then continually deny the Defect's existence.

**C.    DEFENDANTS ACTIVELY CONCEALED THE DEFECT**

49.    Despite their knowledge of the Defect in Class Vehicles, Defendants actively concealed the existence and nature of the Defect from Plaintiff and Class Members. Defendants failed to disclose or actively concealed at and after the time of purchase, lease, or repair (a) any and all known material defects or material nonconformity in Class Vehicles, including the defects pertaining to the EPS; and (b) that Class Vehicles, including the EPS system, was not in good working order, was defective, and was not fit for its intended purpose.

50.    Discovery will show that when consumers present their Class Vehicles to Defendants' authorized dealer for repairs associated with the Defect, rather than repair the problem under warranty, Defendants' dealers typically either inform consumers that their vehicles are functioning properly or inform consumers repairs are not covered under warranty.

51.     Through their acts and omissions, Defendants have caused Plaintiff and Class Members to expend money and/or time at repair facilities and dealerships to diagnose, repair, or replace the Defect in Class Vehicles, despite Defendants' knowledge of the Defect.

**D.    DEFENDANTS UNJUSTLY RETAINED SUBSTANTIAL BENEFITS**

52.     Through discovery, Plaintiff will show Defendants unlawfully failed to disclose the alleged Defect to induce Plaintiff and other putative Class Members to purchase or lease Class Vehicles.

53.     Plaintiff further alleges Defendants engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiff's.

54.     As previously discussed, Plaintiff therefore alleges Defendants unlawfully induced him to purchase his Class Vehicle by concealing a material fact (the Defect) and that he would have paid less for the Class Vehicle, or not purchased it at all, had he known of the Defect.

55.     Accordingly, Defendants' ill-gotten gains, benefits accrued in the form of increased sales and profits resulting from the material omissions that did, and likely will continue to, deceive consumers, should be disgorged.

**E.    HONDA MISREPRESENTED THE CLASS VEHICLES AS SAFE IN LABELING REQUIRED UNDER FEDERAL LAW**

56.     To sell vehicles in the United States, Honda must "certify to the distributor or dealer at delivery that the vehicle or equipment complies with applicable motor vehicle safety standards prescribed" by NHTSA under Chapter 301 of Title 49 of the U.S. Code. Pursuant to Chapter 301, Honda "may not issue the certificate if, in exercising reasonable care," it has "reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115; *see also* 49 U.S.C. § 30112. That safety certificate must be in a label permanently fixed to

the vehicle, and thus all Class Vehicles have permanent labels certifying compliance with the NHTSA safety regulations prescribed under Chapter 301.

57.     Consumers reasonably relied on the safety assurances in the federally mandated labels. Those labels reasonably led Class Vehicle owners and lessees to believe that the Class Vehicles were safe and reliable, when, in reality, they were not.

58.     Had Plaintiff and Class Members known the truth about the risk of the Defect present in Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for the Class Vehicles.

## F.     PLAINTIFF'S AND CLASS MEMBERS' EXPERIENCES

### *Daniel Murillo*

59.     On or around November 2021, Plaintiff Murillo purchased a new 2022 Honda Civic from Honda of Santa Monica, in Santa Monica, California.

60.     Plaintiff purchased his Class Vehicle primarily for personal, family, or household use. Honda manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

61.     Since learning of the Defect, Plaintiff took his vehicle to Lake Elsinore Honda for a diagnostics test. The dealership told him there is no recall regarding this issue and was unable to recreate it.

62.     Plaintiff has suffered a concrete injury as a result of Honda's misconduct and did not receive the full benefit of the bargain in acquiring the vehicle.

63.     As of the date of the filing of this Complaint, Honda has not acknowledged the problem.

64.     Had Plaintiff known of the Defect, he would not have purchased the vehicle at all or would have paid substantially less for it.

*Class Members*

65.    Class Members submitted **at least 145 complaints** to the NHTSA regarding is particular Defect. In addition to the previously mentioned incidents reported to the NHTSA, additional representative examples include NHTSA ID Number 11496002, incident dated September 1, 2022:

> I own a 2022 Honda Civic sport and I am having steering issues. When going over 30+mph, the steering wheel feels very STICKY, on the highway the wheel will stay in a slightly turned position and not return to center, It causes resistance when making small corrections which then gives away when applying pressure, over correcting and making driving dangerous. This started around 8k miles and I now have almost 12k with no fix (I've had the car since 5 miles). Driving this car at first was one of the most fun experiences, but now its getting tiring with this big issue that dealers around my area cannot fix.

66.    NHTSA ID Number 11494265, incident dated November 18, 2022:

> notchy or sticking of steering wheel when driving and low or highway speeds. Less than 8,000 miles on the car and started within the last 1,000 miles. Issue is present with and without driving assist featured enabled/disabled.

67.    NHTSA ID Number 11494599, incident dated November 1, 2022:

> The issues started around 3000 miles. When I turn the steering wheel to stay on the road around a slight curve, it will not naturally return to the center and I have to manually

pull it back. It makes it feel like the car is wandering and if it gets much worse it will be unsafe. My car now has 5500 miles and is exhibiting a light "catch" or stickiness when making small adjustments (mostly noticed on the highway). My dealership is useless and rude and says that they will charge me a fee if they do not find anything wrong with the car, even though it is well under warranty. My concerns were confirmed by a mechanic shop in my area who acknowledged the steering oddity.

68.    NHTSA ID Number 11492103, incident dated October 1, 2022:

when driving straight on highway steering wheel gets stuck at center causing jerking/ oversteering when trying to make small adjustments on highway. turned off all lane keeping assistance and lane departure options with no change. have had vehicle for almost one year and issue just started about one month ago. multiple other owners having same issue from online forums with dealers stating no problem[.]

69.    NHTSA ID Number 11493181, incident dated October 24, 2022:

When driving at normal and highway speeds with or without Lane Keep Assist activated steering rack gets stuck in position. When trying to maintain lane the steering wheel will lock and to release you must steer turn the wheel past this point of resistance. When this happens the car may end up leaving the roadway or entering another lane of traffic. The car has 53,000 miles and the warranty for this part is

out however this is a known problem surfacing in forums with cars under 5000 miles. I feel this should be a recall due to the steering not functioning safely. This problem is getting worse over time and just started a couple weeks ago.

70.    NHTSA ID Number 11495985, incident dated November 17, 2022:

When driving straight on the freeway for a certain amount of time, the steering wheel sticks and I would have to apply more force to adjust the steering. I had the dealership run a diagnostic and they updated the software but the problem still persists. The steering is sensitive and applying extra amount of pressure is dangerous, especially on rainy days.

71.    NHTSA ID Number 11494669, incident dated November 18, 2022:

Steering wheel has some resistance when trying to correct while driving. It feels as if though the steering wheel is getting stuck and I have to force it when trying to correct the car when going straight.

72.    NHTSA ID Number 11495425, incident dated November 24, 2022:

Steering is "sticking" causing temporary moments of resistance while steering which then gives away and can cause an over correction.

73.    NHTSA ID Number 11496854, incident dated December 10, 2022:

While driving the 2022 Civic sport there is a noticeable stickiness to the steering almost as if the wheel will look up

while trying to drive straight and pull the car to different sides of the road. It originally was while driving straight mainly highway miles. Now it's becoming noticeable during day to day driving and turning. This is very unsafe considering the car can turn and steering wheel will not allow the driver to automatically correct because it is locked up. Around 5000 miles the steering wheel will begin having a loose change noise when turning to the left behind the horn, around 10,000 miles the steering wheel will begin locking up and not allowing the driver to correct it and will pull the car to different sides of the road. If you go to the dealership everyone pretends like it's unreal but check any forum and 1000s of people are experiencing these problems with 2022 Civics[.]

74.     NHTSA ID Number 11497793, incident dated December 16, 2022:

When driving at higher speeds on the freeway my steering becomes resistant. Causing over correcting. One day when it was very windy driving to work after over correction I blew into the other lane, luckily no one was close enough. Driving on the freeway for long periods of time causes hand cramps from the amount of grip it requires to keep it center lane. This is a safety issue. I have taken it to Honda on 3 separate occasions for the same issue and every time they say there is nothing wrong.

75.   NHTSA ID Number 11498281, incident dated December 20, 2022:

The steering of the car is hard to control starting at 30 mph and getting progressively worse as you increase the speed. The steering wheel seems to lock in a position and when you try to correct your path of travel it causes an over correction due to the additional force necessary to try and keep the car in the intended path. I had 2 close calls where I almost had an accident on the high way because of this. along with my hand being damaged as a result of a service connected disability I fear that I wont have enough strength to keep the car from veering into a tragedy.

76.   NHTSA ID Number 11501134, incident dated January 10, 2023:

While driving the 2022 Civic Touring there is a noticeable stickiness to the steering almost as if the wheel will look up while trying to drive straight and pull the car to different sides of the road. Its almost like the first 5 degrees right or left are not registered, causing it to lock up. It originally was while driving straight mainly highway miles. Now it's becoming noticeable during day to day driving and turning. This is very unsafe considering the car can turn and steering wheel will not allow the driver to automatically correct because it is locked up. If you go to the dealership everyone pretends like it's unreal but check any forum and tons of people are experiencing these problems with 2022 Civics. I had a dealership tell me to my face that it is 100% "normal".

CLASS ACTION COMPLAINT

77.    NHTSA ID Number 11514409, and incident date of March 29, 2023:

> The steering seems to get suck at any speed over 50 mph. I
> have to jerk the steering wheel to unstick it to keep my car
> in the lane. This is even with all of the [lane] keep assist off
> and no drivers aids being used. I am unable to drive my car
> on the freeway or anywhere over 50 mph. It almost caused
> me to crash on three separate occasions.

## V.    CLASS ACTION ALLEGATIONS

78.    Plaintiff brings this action individually and on behalf of a Nationwide Class and a California Subclass pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4). Plaintiff seeks certification of a Nationwide class, defined as follows:

> All persons in the United States who purchased or leased a
> Class Vehicle for personal use and not for resale
> (the "Nationwide Class").

79.    Pursuant to Fed. R. Civ. P. 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiff asserts claims under the laws of the State of California, and on behalf of a separate statewide class, defined as follows:

> All persons in the State of California who purchased or
> leased a Class Vehicle for personal use and not for resale
> (the "California Subclass").

80.    Where appropriate, the Nationwide Class and California Subclass are collectively referred to as the "Class."

81.    Excluded from the proposed Classes are Honda, any entity in which Honda has a controlling interest, is a parent or subsidiary, or which is controlled by

Honda, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Honda, and judicial officers to whom this case is assigned and their immediate family members.

82.    Plaintiff reserves the right to amend the class definitions, including creating additional subclasses as necessary, after having had an opportunity to conduct discovery.

83.    Certification of Plaintiff's claims for class-wide treatment are appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

84.    The Class Members are ascertainable and readily identifiable from information and records in Honda's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles, which can be used for providing notice to Class Members.

85.    **Numerosity.** Consistent with Fed. R. Civ. P. 23(a)(1), although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, based on data from the NHTSA, Plaintiff believes there are approximately 238,271 Class Members. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

86.    **Commonality and Predominance.** Consistent with Fed. R. Civ. P. 23(a)(2) and 23(b)(3), this action involves common questions of law and fact predominating over any questions that may affect only individual Class Members. Adjudication of these common issues in a single action has important and desirable judicial economy advantages. Common legal and factual issues include:

a.  whether Class Vehicles contain the Defect;

b.  whether the Defect constitutes an unreasonable safety risk;

c.  whether Honda knew of the Defect, and if so, how long Honda knew of the Defect;

d.  whether Honda engaged in unfair, unlawful, and/or deceptive business practices in selling and leasing to consumers Class Vehicles affected by the Defect;

e.  whether Honda breached the implied warranty of merchantability relating to the defective nature of the Class Vehicles;

f.  whether Class Vehicles suffered a diminution in value resulting from the Defect;

g.  whether Honda was unjustly enriched by receiving monies in exchange for the defective Class Vehicles;

h.  whether Honda should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the defective Class Vehicles;

i.  whether Honda prioritized putting parts allegedly needed to repair and/or retrofit Class Vehicles with the Defect into other new vehicles instead;

j.  whether Honda acted willfully and in wanton disregard of the consequences of its actions to consumers;

k.  whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages; and

l.  whether Plaintiff and Class Members are entitled to equitable relief, including an injunction enjoining Honda from engaging in the wrongful and unlawful conduct alleged herein.

87.  **Typicality.** Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the claims of the Class Members in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed and manufactured by

Honda that is defective. The representative Plaintiff, like all Class Members, has been damaged by Honda's misconduct in that he possesses a vehicle that is unsafe and unfit for its intended purpose, overpaid for the Class Vehicle, and suffered or will suffer damages due to the diminished value of the Class Vehicle caused by the Defect. Furthermore, the factual basis of Honda's misconduct is common to all Class Members and represent a common thread resulting in injury to the Class as a whole. Plaintiff asserts the same claims and forms of relief as the Class.

88.    **Adequacy of Representation.** Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff and counsel will fairly and adequately protect the interests of the Class. Plaintiff is a member of the Class defined herein; is committed to vigorously pursuing this matter against Defendants to obtain relief for the Class; and has no interests that are antagonistic to, or in conflict with, the interests of other Class Members. Plaintiff retained counsel who are competent and experienced in litigating class actions and complex litigation, including vehicle defect class actions. Plaintiff and his counsel intend to vigorously prosecute this case, and will fairly and adequately protect the Class's interests.

89.    **Superiority.** Consistent with Fed. R. Civ. P. 23(b)(3), a class action is superior to other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and other Class Members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Honda, making it impracticable for Class Members to individually seek redress for Honda's wrongful conduct. Even if Class Members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer

management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

90.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3), because the common questions of law and fact predominate over any questions affecting individual Class Members, a class action is superior to other available methods for the fair and efficient adjudication of this controversy, and the requirements of Rule 23(a) are met.

91.    **Injunctive and Declaratory Relief.** Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Honda, through its uniform conduct, acted or failed and refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole. Moreover, Honda has failed to repair the defect or extend Honda's warranties to cover the Defect and related work. Honda has not been forced to repair Class Vehicles in a timely manner, thus making injunctive relief a live issue and appropriate to the Class as a whole.

92.    Likewise, particular issues are also appropriate for certification under Fed. R. Civ. P. 23(c)(4) because the claims present particular, common issues, the resolution of which would materially advance the resolution of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.  whether Class Vehicles contained the Defect;

b.  whether the Defect was caused by Honda's design of Class Vehicles;

c.  whether Honda adequately tested Class Vehicles to detect the Defect prior to sale;

d.  whether Honda failed to comply with applicable laws, regulations, and/or industry standards relating to vehicle design, safety, and/or testing amounting to negligence; and

e.  whether Honda acted willfully and in wanton disregard of the consequences of its actions to consumers.

## VI.    CAUSES OF ACTION

### COUNT I

**Breach of Express Warranty**
(On Behalf of the Nationwide Class and California Subclass)

93.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 92 as though fully stated herein.

94.    Plaintiff brings this count individually and on behalf of all Class Members.

95.    Honda is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

96.    With respect to leases, Honda is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

97.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law.

98.    Defendants provided an express warranty described herein to all purchasers and lessees of Class Vehicles, which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under relevant state law.

99.    In a section entitled "Warranty Coverage," Defendants' Warranty provides in relevant part that "Honda will repair or replace any part that is defective in material or workmanship under normal use. . . . All repairs/replacements made under this warranty are free of charge. The

replaced or repaired parts are covered only until this New Vehicle Limited Warranty expires."[15]

100.     According to Honda's New Vehicle Limited Warranty, Class Vehicles are "covered for 3 years or 36,000 miles, whichever comes first."[16]

101.     The Warranty formed the basis of the bargain reached when Plaintiff and Class Members purchased or leased their Class Vehicles.

102.     Defendants breached the express warranty through the acts and omissions described *supra*.

103.     Plaintiff and Class Members have had sufficient direct dealings with either Honda and/or its agents (i.e., dealerships and technical support) to establish privity of contract between Honda, on one hand, and Plaintiff and each Class Member on the other hand. Nonetheless, privity is not required here because Plaintiff and each Class Member are the intended third-party beneficiaries of contracts between Honda and its distributors and dealers, and specifically, of Honda's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

104.     The limited warranty promising to repair and/or correct a manufacturing or workmanship defect fails of its essential purpose because the contractual remedy is insufficient to make Plaintiff and Class Members whole, because on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies, i.e. a permanent repair, within a reasonable time.

105.     Plaintiff was not required to notify Honda of the breach because affording Honda a reasonable opportunity to cure its breach of written warranty

---

[15] See *2022 Honda Warranty Basebook*, *supra*, note 14, at 9.
[16] *Id.*

would have been futile. Honda was also on notice of the Defect from the complaints and service requests it received from Class Members, including formal complaints submitted to NHTSA as well as through other internal sources.

106.    As a result of Defendants' breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

107.    As a result of Defendants' breach of the express warranty, Plaintiff and Class Members are entitled to legal and equitable relief against Defendants, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

## COUNT II

### Breach of Implied Warranty
(On Behalf of the Nationwide Class and California Subclass)

108.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 92 as though fully stated herein.

109.    Plaintiff brings this count individually and on behalf of all Class Members.

110.    Defendants are, and were at all relevant times, merchants with respect to vehicles and sellers of vehicles.

111.    The Class Vehicles are, and were at all relevant times, goods under the Uniform Commercial Code and individual state commercial codes.

112.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law. In addition, a warranty that Class Vehicles were fit for their particular purpose is implied by law.

113.   Defendants knew at the time of sale of the Class Vehicles that Plaintiff and Class Members intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that Plaintiff and Class Members were relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

114.   The Class Vehicles were and are not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of the Defect, as detailed above. Specifically, they are inherently defective and dangerous due to the issues with the steering problems in Class Vehicles as described *supra*. This Defect renders the Class Vehicles unsafe and significantly reduces their value.

115.   As a direct and legal result of Defendants' breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

## COUNT III

### Unjust Enrichment
(On Behalf of the Nationwide Class and California Subclass)

116.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 92 as though fully stated herein.

117.   Plaintiff brings this count individually and on behalf of all Class Members.

118.   Defendants received and retained a benefit from Plaintiff and Class Members, and inequity has resulted.

119.   Defendants benefitted through their unjust conduct by selling and leasing Class Vehicles with the Defect at a profit for more than the Class Vehicles were worth to Plaintiff and Class Members, who overpaid for these Class Vehicles with the Defect, and/or would not have purchased or leased Class Vehicles at all, and who have been forced to pay other costs. The money from the sale and lease of

Class Vehicles flows directly back to Defendants even though the vehicles are purchased or leased through Defendants' authorized dealers.

120.    As an additional direct and legal result of Defendants' failure to disclose the Defect in Class Vehicles, Defendants have and will continue to benefit from the Class Vehicles requiring repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendants.

121.    Defendants have also been unjustly enriched due to the known Defect in Class Vehicles through the use of monies received that earned interest or otherwise added to Defendants' profits when said monies should have remained with Plaintiff and Class Members.

122.    Plaintiff and Class Members were not aware of the true facts regarding the Defect in Class Vehicles and did not benefit from Defendants' unjust conduct. It is inequitable for Defendants to retain these benefits.

123.    Plaintiff and Class Members have suffered damages and do not have an adequate remedy at law.

124.    As a result of Defendants' conduct, the amount of their unjust enrichment should be disgorged, in an amount to be proven at trial.

## COUNT IV

### Negligence
### (On Behalf of the Nationwide Class and California Subclass)

125.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 92 as though fully stated herein.

126.    Plaintiff brings this count individually and on behalf of all Class Members.

127.    Defendants owed a duty to consumers to exercise a degree of care that a reasonable person in the like position would exercise. Defendants failed to do so. Among other things Defendants had a duty to follow industry customs and standards imposed by federal regulations, to assess the foreseeability and

likelihood of injuries due to the Defect, and to assess the seriousness and frequency of the injuries threatened by the Class Vehicles.

128.   Defendants breached their duty to Plaintiff and Class Members. Among other things, and without limiting the generality of the foregoing, Defendants failed to (1) adequately inspect Class Vehicles, (2) design Class Vehicles properly, and (3) adequately test Class Vehicles.

129.   Defendants' negligence was a substantial factor in causing Plaintiff and Class Members to suffer economic, and potentially physical harm, as well as other damages to be proven at the time of the trial.

130.   Plaintiff and Class Members were harmed because they were, and still are, in fear and at risk of immediate catastrophic injury to themselves and passengers of the Class Vehicles, and people and property surrounding Class Vehicles while in motion.

131.   As a direct and legal result of Defendants' wrongful acts and omissions, Plaintiff and Class Members were harmed.

## COUNT V

### Fraud by Omission or Fraudulent Concealment
(On Behalf of the Nationwide Class and California Subclass)

132.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 92 as though fully stated herein.

133.   Plaintiff brings this count individually and on behalf of all Class Members.

134.   Defendants knew Class Vehicles suffered from an inherent Defect: the EPS systems were defectively designed and/or manufactured, and were not suitable for their intended use.

135.   Defendants concealed from, and failed to disclose to, Plaintiff and Class Members the defective nature of the Class Vehicles.

136.    Defendants had a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles because the omitted facts were material because they directly impact the safety of the Class Vehicles and Defendants:

   a.  knew the omitted facts regarding the Defect were not known to or reasonably discoverable by Plaintiff and Class Members;

   b.  were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles;

   c.  made partial disclosures about the quality of the Class Vehicles without revealing their true defective nature; and

   d.  actively concealed the defective nature of the Class Vehicles from Plaintiff and Class Members.

137.    The facts Defendants concealed from and/or did not disclose to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles or pay a lesser price for them.

138.    Whether a vehicle's EPS is defective, which can cause random momentary failures during normal use, typically at highway speeds, requiring increased steering effort/input by the driver without warning, thereby causing jerky, abrupt, and/or overcorrected steering input, is a material safety concern. Had Plaintiff and Class Members known of the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

139.    Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles to induce Plaintiff and Class Members to act thereon. Plaintiff and Class Members justifiably relied on Defendants' omissions to their detriment. This detriment is evident from Plaintiff's and Class Members' purchase or lease of the Class Vehicles.

140.    Defendants continued to conceal the defective nature of Class Vehicles even after Class Members began to report the problems. Defendants continue to cover up and conceal the true nature of the problem today.

141.    As a direct and legal result of Defendants' misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages. Plaintiff and the Class reserve their right to elect either to (a) rescind their purchase or lease of the defective Class Vehicles and obtain restitution or (b) affirm their purchase or lease of the defective Class Vehicles and recover damages.

## COUNT VI

### Failure to Recall/Retrofit
(On Behalf of the Nationwide Class and California Subclass)

142.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 92 as though fully stated herein.

143.    Plaintiff brings this count individually and on behalf of all California Subclass Members.

144.    Defendants manufactured, marketed, distributed, sold, or otherwise placed Class Vehicles into the stream of commerce.

145.    Defendants knew, or reasonably should have known, that Class Vehicles were dangerous when used in a reasonably foreseeable manner and posed an unreasonable safety risk.

146.    Defendants became aware Class Vehicles were dangerous when used in a reasonably foreseeable manner and posed an unreasonable risk after Class Vehicles were sold.

147.    Defendants failed to recall Class Vehicles in a timely manner.

148.    A reasonable manufacturer in same or similar circumstances would have timely and properly recalled the Class Vehicles.

149.    Plaintiff and Class Members were harmed by Defendants' failure to recall the Class Vehicles properly and in a timely manner and, as a result, have

suffered damages caused by Defendants' ongoing failure to recall, retrofit, and fully repair Class Vehicles.

150.    Defendants' failure to timely recall Class Vehicles was a substantial factor in causing the harm to Plaintiff and Class Members as alleged herein.

## COUNT VII

**Violation of the Song-Beverly Consumer Warranty Act
for Breach of Implied Warranties
Cal. Civ. Code §§ 1791.1 and 1792**
(On Behalf of the California Subclass)

151.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 92 as though fully stated herein.

152.    Plaintiff brings this count individually and on behalf of all California Subclass Members.

153.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

154.    Defendants are "manufacturers" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

155.    Defendants impliedly warranted to Plaintiff and Class Members that Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792. However, Class Vehicles do not have the quality that a buyer would reasonably expect.

156.    California Civil Code § 1791.1(a) states:

> "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:
>
> a.    Pass without objection in the trade under the contract description.

b. Are fit for the ordinary purposes for which such goods are used.

c. Are adequately contained, packaged, and labeled.

d. Conform to the promises or affirmations of fact made on the container or label.

157.    Class Vehicles would not pass without objection in the trade of passenger vehicle sales because they are equipped with a defect that may cause random momentary steering failures during normal use, typically at highway speeds, that require increased steering effort/input by the driver without warning in Class Vehicles. The Defect renders the Class Vehicles unsafe, and thus, not fit for ordinary purposes.

158.    The Class Vehicles are not adequately labeled because the labeling fails to disclose the Defect.

159.    Defendants breached the implied warranty of merchantability by selling and leasing Class Vehicles equipped with the Defect. Furthermore, the Defect has prevented Plaintiff and Class Members from receiving the benefit of their bargain and caused Class Vehicles to diminish in value.

160.    As a direct and legal result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Class Members received goods with a dangerous condition that substantially impairs their value and use.

161.    Plaintiff and Class Members have been damaged as a result of the diminished value of Class Vehicles.

162.    Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

163.   Under Cal. Civ. Code § 1794, Plaintiff and the Class Members are entitled to costs and attorneys' fees.

## COUNT VIII

**Violation of California's False Advertising Law**
**Business & Professions Code Section 17500,** *et seq.*
(On Behalf of the California Subclass)

164.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 92 as though fully stated herein.

165.   Plaintiff brings this count individually and on behalf of all California Subclass Members.

166.   Plaintiff, California Subclass Members, and Defendants are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

167.   California False Advertising Law ("California FAL") prohibits false advertising. (California Bus. & Prof. Code § 17500.)

168.   Defendants, in the course of their business, through their agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of Class Vehicles.

169.   Defendants engaged in untrue and misleading advertising prohibited by California Bus. & Prof. Code § 17500 by misrepresenting Class Vehicles as being safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles.

170.   Defendants made, or caused to be made, and disseminated throughout California advertising, marketing, and other publications containing numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiff and California Subclass Members.

171.   Defendants' unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, had a tendency and capacity to mislead and create a false impression in consumers, and were likely to—and did in fact—deceive reasonable consumers, including Plaintiff and California Subclass Members, about the true safety and reliability of Class Vehicles, and the quality and true value of Class Vehicles.

172.   Defendants' scheme and concealment of the Defect and true characteristics of Class Vehicles were material to Plaintiff and California Subclass Members, as Defendants intended. Had Plaintiff and California Subclass Members known the truth, they would not have purchased or leased Class Vehicles, or would have paid significantly less for them.

173.   Plaintiff and California Subclass Members relied on Defendants and had no way of discerning that those representations were false and misleading, or otherwise learning the facts Defendants had concealed or failed to disclose. Plaintiff and California Subclass Members did not, and could not, unravel Defendants' deception on their own.

174.   Defendants had an ongoing duty to Plaintiff and the California Subclass to refrain from unfair or deceptive practices under the California FAL in the course of their business. Defendants owed Plaintiff and California Subclass Members a duty to disclose all material facts concerning the Defect in Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the Defect from Plaintiff and California Subclass Members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

175.   Plaintiff and California Subclass Members suffered ascertainable losses and actual damages as a direct and legal result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

176.   Defendants' violations present a continuing risk to Plaintiff and
California Subclass Members, as well as to the general public. Defendants'
unlawful acts and practices complained of herein affect the public interest.

177.   Plaintiff and California Subclass Members seek an order enjoining
Defendants' false advertising, any such orders or judgments as may be necessary to
restore Plaintiff and California Subclass Members any monies acquired by unfair
competition, including restitution and/or restitutionary disgorgement, and any other
just and proper relief available under the false advertising provisions of the
California FAL.

**COUNT IX**

**Violation of the Consumer Legal Remedies Act**
**Cal. Civ. Code § 1750, *et seq.***
(On Behalf of the California Subclass)

178.   Plaintiff incorporates by reference the allegations contained in
paragraphs 1 through 92 as though fully stated herein.

179.   Plaintiff brings this count individually and on behalf of all California
Subclass Members.

180.   Class Vehicles are "goods" within the meaning of California Civil
Code § 1761(a).

181.   Plaintiff, California Subclass Members, and Defendants are "persons"
within the meaning of Cal. Civ. Code § 1761(c).

182.   Plaintiff and California Subclass Members are "consumers" within the
meaning of Cal. Civ. Code § 1761(d).

183.   The California Legal Remedies Act ("CLRA") prohibits "unfair
methods of competition and unfair or deceptive acts or practices undertaken by any
person in a transaction intended to result or that results in the sale or lease of goods
or services to any consumer[.]" (Cal. Civ. Code § 1770.)

184.   Defendants, in the course of their business, through their agents, employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts relating to the reliability, safety, and performance of Class Vehicles, as detailed *supra*.

185.   Defendants engaged in one or more of the following unfair or deceptive business practices, as defined in Cal. Civ. Code § 1770(a), by misrepresenting Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risks posed by Class Vehicles:

- representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, in violation of Cal. Civ. Code § 1770(a)(5);
- representing that Class Vehicles are of a particular standard, quality and grade when they are not, in violation of Cal. Civ. Code § 1770(a)(7);
- advertising Class Vehicles with the intent not to sell or lease them as advertised, in violation of Cal. Civ. Code § 1770(a)(9); and
- representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not, in violation of Cal. Civ. Code § 1770(a)(16).

186.   Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to—and did in fact—deceive reasonable consumers, including Plaintiff and California Subclass Members, and about the true safety and reliability of Class Vehicles, the quality of Class Vehicles, and the true value of Class Vehicles.

187.   Defendants' scheme and concealment of the Defect and true characteristics of Class Vehicles were material to Plaintiff and California Subclass Members, as Defendants intended. Had Plaintiff and California Subclass Members known the truth, they would not have purchased or leased their Class Vehicles or would have paid significantly less for them.

188.   Plaintiff and California Subclass Members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants concealed or failed to disclose. Plaintiff and California Subclass Members did not, and could not, unravel Defendants' deception on their own.

189.   Defendants had an ongoing duty to Plaintiff and California Subclass Members to refrain from unfair or deceptive practices under the CLRA in the course of their business. Defendants owed Plaintiff and California Subclass Members a duty to disclose all the material facts concerning the Defect in Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the Defect from Plaintiff and California Subclass Members, and/or they made representations that were rendered misleading because the representations were contradicted by withheld facts.

190.   Plaintiff and California Subclass Members suffered ascertainable losses and actual damages as a direct and legal result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

191.   Defendants' violations present a continuing risk to Plaintiff and California Subclass Members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

192.   Defendants were provided notice of the issues raised in this count and this Complaint by at least 145 separate reports by consumers and a Preliminary Evaluation opened by the Office of Defects Investigation regarding sticky steering/Defect in Class Vehicles, as referenced *supra*.

CLASS ACTION COMPLAINT

193.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiff and the California Subclass Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the CLRA against Defendants.

194.    Pursuant to Cal. Civ. Code § 1782(a), Plaintiff sent a letter to Defendant AHM concurrently with the filing of this Complaint notifying Defendant AHM of their CLRA violations and affording them the opportunity to correct their business practices and rectify the harm it caused. Plaintiff sent the CLRA notice via certified mail, return receipt requested, to Defendants' principal place of business. Should Defendants fail to correct its business practices or provide the relief requested within 30 days, Plaintiff will amend this Complaint to seek monetary damages under CLRA.

## COUNT X

### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200, *et seq.*
(On behalf of the California Subclass)

195.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 92 as though fully stated herein.

196.    Plaintiff brings this count individually and on behalf of all California Subclass Members.

197.    California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq.*, prohibits any "unlawful, unfair or fraudulent business act or practices."

198.    In the course of its business, Defendants violated the UCL by engaging in the following unlawful and unfair business acts and practices:

      a.  selling and leasing a Class Vehicle with a defect rendering the vehicle unsafe and unfit for normal use;

b. breaching California statutory and common law implied warranties associated with the Class Vehicles;

c. Violating, among other laws, federal automotive labeling laws, the Magnuson-Moss warranty act, the CLRA, and the Song-Beverly Act;

d. failing to adequately fix, repair, or otherwise remediate the Defect in Class Vehicles;

199. Had Plaintiff and California Subclass Members known of the Defect, they would not have purchased or leased the Class Vehicles or would have paid significantly less for them.

200. Plaintiff and California Subclass Members suffered an ascertainable loss of money and property as a direct and legal result of Defendants' violations of the UCL, as set forth *supra*.

201. Pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*, Plaintiff and California Subclass Members seek any such orders or judgments as may be necessary to restore to Plaintiff and California Subclass Members any monies acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203, and any other just and proper relief available under the UCL.

202. Further, Plaintiff and California Subclass Members request injunctive relief to remedy the violations of the UCL by Defendants, including a full repair of the Defect and replacement of all necessary parts, an extension of the warranties for Class Vehicles so that all repairs and parts replacements related to the Defect are covered by such warranties and do not result in out-of-pocket costs to Plaintiff and California Subclass Members, the provision of loaner vehicles while the work to correct the Defect is being performed, and all other applicable relief.

203. Plaintiff and California Subclass Members currently lack an adequate remedy at law for all the harms caused by the Defect. Only through injunctive and

restitutionary relief will Plaintiff and California Subclass Members be able to obtain a complete repair of the defect and an extension of Defendants' warranties to cover that work, as well as restitution of the monies Plaintiff and California Subclass Members have already spent in efforts to repair the Class Vehicles and finding alternative modes of transportation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of the members of the Class, prays for relief as follows:

1. an order certifying the proposed Nationwide Class and California Subclass, designating Plaintiff as the named representative of the Nationwide Class and California Subclass, and designating his attorneys as Class Counsel;

2. a declaration that Defendants are financially responsible for adequately notifying all Class Members about the defective nature of Class Vehicles;

3. an award to Plaintiff and Class Members of compensatory, exemplary, and statutory damages, in an amount to be proven at trial;

4. for restitution of all monies or property wrongfully obtained by Defendants;

5. for disgorgement, for the benefit of the Class, all or part of the ill-gotten profits;

6. an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5, or as otherwise allowed by law;

7. an award of pre-judgment and post-judgment interest, as provided by law;

8. leave to amend the Complaint to conform to the evidence produced at trial; and

9. such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by jury.

Respectfully submitted,

Dated: April 4, 2023          **CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**

By:      /s/ *Gayle M. Blatt*
             GAYLE M. BLATT
             *Attorneys for Plaintiff*